NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRIAN DAWE; FLAT IRON MOUNTAIN ASSOCIATES, LLC, formerly known as FLAT IRON MOUNTAIN ASSOCIATES, a partnership, | No. 11-16284 D.C. No. 2:07-cv-01790-LKK-EFB |
| Plaintiffs-Appellees, | MEMORANDUM[*] |
| v. | |
| CORRECTIONS USA; CALIFORNIA CORRECTIONAL PEACE OFFICERS ASSOCIATION; JAMES BAIARDI; and DONALD JOSEPH BAUMANN, | |
| Defendants-Appellants. | |
| BRIAN DAWE; FLAT IRON MOUNTAIN ASSOCIATES, LLC, formerly known as FLAT IRON MOUNTAIN ASSOCIATES, a partnership, | No. 11-16416 D.C. No. 2:07-cv-01790-LKK-EFB |
| Plaintiffs-Appellants, | |
| v. | |

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

CALIFORNIA CORRECTIONAL
PEACE OFFICERS ASSOCIATION;
JAMES BAIARDI, and DONALD
JOSEPH BAUMANN,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, District Judge, Presiding

Argued and Submitted November 8, 2012
San Francisco, California

Before: KLEINFELD and BYBEE, Circuit Judges, and BENITEZ, District
Judge.[**]

A jury found Defendants liable for tort and contract claims and awarded a total of $2,591,409 in compensatory damages and $10,085,000 in punitive damages. The district court reduced the punitive damage awards to a total of $2,368,406 to comport with due process. Defendants appeal. Plaintiffs cross-appeal for restoration of the jury's punitive damages award. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

---

[**] The Honorable Roger T. Benitez, District Judge for the U.S. District Court for Southern California, sitting by designation.

First, Defendants argue that Plaintiffs improperly based their tort claims, particularly defamation, on statements that were absolutely privileged pursuant to California Civil Code § 47(b). We disagree. The applicability of California's "litigation privilege" is a question of law. Kashian v. Harriman, 98 Cal. App. 4th 892, 913 (2002). Privileged statements must, *inter alia*, "have some connection or logical relation to the action." Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990). Put differently, the "the *communicative act* . . . must function as a necessary or useful step in the litigation process and must serve its purposes." Rothman v. Jackson, 49 Cal. App. 4th 1134, 1146 (1996) (emphasis in original). Four messages are at issue here. We cannot conclude that any of the them, read in context, functioned as a necessary or useful step in obtaining a remedy that can be awarded by a court, such as the compelled release of financial records initially sought by Corrections USA (CUSA). That the messages incorporated similar allegations to those asserted in the parties' expanding legal dispute or perhaps served complementary interests is not enough.

Second, Defendants argue that Harkins's defamation claim against California Correctional Peace Officers Association (CCPOA) was barred by the statute of limitations. However, the statute-of-limitations defense was not properly preserved in the final pretrial order. A district court's "decisions regarding the

3

preclusive effect of a pretrial order on issues of law and fact at trial will not be disturbed unless they evidence a clear abuse of discretion." Miller v. Safeco Title Ins. Co., 758 F.2d 364, 369 (9th Cir. 1985). We think the trial court, despite some expressions of uncertainty, found the defense not preserved. This interpretation was not an abuse its discretion.

Third, Defendants argue that Dawe is a limited purpose public figure for defamation purposes. Whether someone is a limited purpose public figure is a question of law. Reader's Digest Ass'n v. Superior Court, 37 Cal. 3d 244, 252 (1984). A limited purpose public figure is an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974). Even if prison privatization was a public controversy, and even if Dawe voluntarily injected himself into that controversy, Defendants' defamatory comments were not germane to that participation. Whether Dawe mismanaged CUSA or engaged in malfeasance had little bearing on whether he was a credible speaker on prison privatization. The district court did not abuse its discretion by denying Defendants' motion for a new trial.

Fourth, Defendants contend there is no support for the jury's finding of tortious interference with Flat Iron's contract. Having reviewed the record, we find

4

evidence, such as the September 30th e-mail, sufficient to support the jury's finding.

Fifth, Defendants contend that certain compensatory awards included impermissible double recovery. Defendants assert, for example, that the award against CUSA for breach of contract and the award against CCPOA for tortious interference with that contract compensate for the same injury. Even if that were true, reversal would not be required. "The [tortious interference] defendant and the contract breaker are both wrongdoers . . . and each is liable for the entire loss that he has caused. Even a judgment obtained for breach of the contract if it is not satisfied does not bar or reduce recovery from the one who has caused the breach." Restatement (Second) of Torts § 774A cmt. e (1979).

Defendants also perceive double-counting in Dawe's defamation awards. For actual damages from defamation, the jury awarded Dawe $100,000 against CUSA, $1,639,405 against CCPOA, and $25,000 each against Baumann and Baiardi, for a total of $1,789,405. Defendants argue that this is the precise figure advanced by Plaintiffs' expert as an estimate for *all* damages suffered by Dawe and Flat Iron, including those tied to the contract claims. Accordingly, Defendants seek a reduction of $333,000, the amount awarded to Flat Iron against CCPOA for intentional interference with contractual relations. We decline. "We must uphold

5

the jury's damages verdict whenever possible, and all presumptions are in favor of the judgment." DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1224 (9th Cir. 2010) (internal quotation marks omitted). Double counting may have occurred here, but that is not a certainty.

Sixth, Defendants assert that the $328,001 in compensatory and punitive damages awarded against CUSA is unconstitutional because it is nearly four times the organization's "net worth." We disagree. There is no constitutional prohibition of awards in excess of a party's net worth. The punitive component of the challenged award is $81,000. We cannot say that the total is unconstitutional.

On cross-appeal, Plaintiffs ask us to reverse the district court's remittitur and restore the jury's punitive damage awards. A remittitur of punitive damages to comport with due process is reviewed de novo. See Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 431 (2001). As a general rule, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003). Higher ratios may be constitutional where a particularly egregious act has resulted in small economic damages. Id. But "[w]hen compensatory damages are substantial, then a lesser ratio, *perhaps only*

6

*equal to compensatory damages*, can reach the outermost limit of the due process guarantee." Id. (emphasis added).

The district court reduced one punitive damage award against CUSA and four against CCPOA. Plaintiffs first assert that the court used the wrong benchmark in its ratio analysis of Harkins's false imprisonment claim against CUSA. We find the court's approach consistent with our decision in Bains LLC v. Arco Prods. Co., 405 F.3d 764 (9th Cir. 2005).

Plaintiffs next assert that the awards against CCPOA should not have been remitted to a 1:1 ratio due to the reprehensibility of the organization's conduct. Plaintiffs did not suffer physical harm and CCPOA's conduct did not evince a reckless disregard of bodily health. Further, four defamatory publications within the context of the same dispute do not evidence a high level of recidivism. Although the other factors, namely malice and financial vulnerability, tilt toward Plaintiffs, the overall degree of reprehensibility suggests that, under the circumstances, a 1:1 ratio was proper.

**AFFIRMED**.