Filed 2/2/15  Rohani v. Dinaali CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHARIAR ROHANI,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALADDIN DINAALI,<br><br>    Defendant and Appellant. | B248236<br><br>(Los Angeles County<br>Super. Ct. No. SS023157) |

APPEAL from judgment of the Superior Court of Los Angeles County, David J. Cowan, Commissioner.  Affirmed.

Aladdin Dinaali, in pro. per., for Defendant and Appellant,

Law offices of Ehsan Afaghi and Ehsan Afaghi for Plaintiff and Respondent.

_____

## INTRODUCTION

Defendant Aladdin Dinaali appeals the trial court's entry of a restraining order against him, arguing that Petitioner Shariar Rohani failed to provide sufficient evidence to support a restraining order under Code of Civil Procedure[1] section 527.6 and the trial court improperly failed to grant his anti-SLAPP special motion to strike. We affirm because substantial evidence supports the court's order and the anti-SLAPP motion must fail as Rohani succeeded in proving his civil harassment claim.

## FACTS AND PROCEDURAL BACKGROUND

This is one of several appeals before us involving Dinaali and Rohani. Each appeal arises out of an underlying dispute regarding the musical recordings and memorabilia of the late Iranian singer and actress, Banoo Ezat Roohbakhsh. Dinaali sued Rohani and Rohani's brother, claiming that they committed fraud and interfered with Dinaali's contract to obtain the Roohbakhsh catalog of recordings and memorabilia from a third party who had possession of it. Rohani obtained summary judgment against Dinaali, and Dinaali has appealed in that case.

During the underlying lawsuit, Dinaali created the website www.ShariarRohani.com, which describes Rohani as a criminal and disparages him. Dinaali also contacted Rohani's clients, disparaging him to them and causing Rohani to lose business. Following summary judgment on the underlying case, Dinaali sent Rohani emails, which berated, insulted, and called Rohani derogatory names. Rohani then filed a request for a civil harassment restraining order against Dinaali, describing Dinaali's harassment, explaining how he suffered from anxiety and depression due to the harassment, and stating that he feared for his own safety due to Dinaali's mental state. Three of the emails from Dinaali were attached to the civil restraining order request, and each involved or was related to Dinaali asking Rohani whether he would be represented by counsel for the appeal in the underlying case. Despite the emails' stated purpose,

---

[1] All subsequent statutory references are to the Code of Civil Procedure, unless otherwise indicated.

2

within them, Dinaali calls Rohani "an arrogant [f---ing a—hole]" and "a loser." Dinaali also writes: "[y]ou piece of [s—t] call the police on me[2] and you think I am going to let you go you. [*sic*] I am going to hound you in the courts until your last miserable [f---ing] dying day or until you run out [of] money whichever comes first. Go call the police on me now you [f---ing] coward of a [expletive]."

After the court issued a temporary restraining order but prior to the injunction hearing, Dinaali called Rohani on the phone and threatened to kill him (which Dinaali denied at the hearing). On the day of the hearing for the civil harassment restraining order request, Dinaali filed a motion to strike under the anti-SLAPP statute, section 425.16. In the anti-SLAPP motion, Dinaali argued that his communicative conduct was protected by the First Amendment and the litigation privilege set forth in Civil Code section 47, subdivision (b).

At the hearing, the court heard argument from both sides. Rohani testified to the aforementioned actions by Dinaali, and informed the court of Dinaali's recent death threat. Rohani reiterated that he felt physically threatened by Dinaali. Dinaali denied making the threat and stated that the emails he sent Rohani were related to litigation. Based on the foregoing, the court concluded that Dinaali had harassed Rohani, and granted Rohani's request for the restraining order. The court also denied the anti-SLAPP special motion to strike.

## DISCUSSION

1.    *Substantial Evidence Supported the Court's Entry of the Restraining Order*

Dinaali argues that insufficient evidence supports the findings necessary to issue a restraining order. We review whether the trial court's entry of the restraining order is supported by substantial evidence in the record. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.) "But whether the facts, when construed most favorably [to the court's order],

---

[2]    Rohani contacted the police in 2009 after receiving a series of 11 harassing emails from Dinaali in a short period of time. At that time, the police admonished Dinaali to stop sending harassing emails to Rohani.

3

are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review." (*Ibid.*)

Section 527.6 authorizes persons who have suffered harassment to obtain a temporary restraining order or an injunction prohibiting harassment. An injunction is only proper where the harassment is likely to recur in the future. (*Russell v. Douvan* (2003) 112 Cal.App.4th 399, 402 ["An injunction is authorized only when it appears that wrongful acts are likely to recur."].) Section 527.6, subdivision (b)(3) defines "harassment" as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." The statute also defines "credible threat of violence" to mean "a knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose." (*Id.*, subd. (b)(2).) The statute states that " '[c]ourse of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose . . . . Constitutionally protected activity is not included within the meaning of 'course of conduct.' " (*Id.*, subd. (b)(1).) "If the judge finds by clear and convincing evidence that unlawful harassment exists, an injunction shall issue prohibiting the harassment." (*Id.*, subd. (i).) " ' "Clear and convincing" evidence requires a finding of high probability.' " (*Russell v. Douvan* (2003) 112 Cal.App.4th 399, 401.)

Here, there is substantial evidence of harassment. In his request for a civil harassment restraining order, Rohani stated that Dinaali subjected him to "continuous email harassment" after Dinaali had lost a civil case against him. Rohani asserted that Dinaali "created a website calling [him] a criminal[,] which has caused damage to [Rohani's] business." Dinaali admits that he published this website in February 2011, during the litigation for interference with contractual relations. Rohani explained that

4

Dinaali disparaged his name and damaged his business, through the website and by contacting his clients. In the restraining order request, Rohani stated that he was "afraid for [his] safety," indicating that Dinaali was capable of causing him damage because of Dinaali's mental state. Rohani also wrote that he was "psychologically devastated," depressed, and suffered anxiety attacks because he feared for his safety due to Dinaali, and was constantly under stress due to years of dealing with Dinaali's harassment.

At the hearing on the restraining order, Rohani testified that everything stated in his request for a restraining order was true. Rohani also testified that several days after obtaining the temporary restraining order, he received a phone call from Dinaali where Dinaali threatened him. Rohani testified that Dinaali told him: "either he's going to get me in the court or he's going to kill me." At the hearing, Rohani described Dinaali as a "vicious man," and expounded on the stress Dinaali's harassment had caused him, stating that he was mentally abused and had been waking up with nightmares.

Rohani's testimony establishes that Dinaali engaged in a willful course of conduct to annoy and harass Rohani by publishing disparaging information about him on the internet and directly to Rohani's clients. This course of conduct culminated in Dinaali's threat of violence against Rohani after Dinaali became frustrated by his lack of success during the underlying litigation. Dinaali's behavior evidences a pervasive intent to cause Rohani financial, emotional, and most recently, physical damage. We conclude that a reasonable person, if subjected to Dinaali's conduct, would be alarmed by Dinaali's behavior and suffer substantial emotional distress, particularly after hearing Dinaali's threat of harm. Rohani testified that he has suffered substantial emotional distress as a result of the harassment in the form of depression, anxiety attacks, nightmares, and psychological devastation. Based on the forgoing, we thus conclude that substantial evidence supports the court's finding of harassment.

Furthermore, the evidence indicates that the harassment is likely to continue in the future, and thus a restraining order is apt. The threat of harm indicates that Dinaali will continue this harassment against Rohani until he physically harms Rohani or until Dinaali prevails in his litigation against Rohani. Additionally, the email correspondence, which

5

states that Dinaali will continue to "hound" Rohani until his "dying day" or until Rohani is insolvent, corroborates this intent. We note that in our analysis of Dinaali's acts constituting harassment, we do not rely on Dinaali's emails for evidence of harassment because they are allegedly privileged communications under Civil Code section 47, subdivision (b), which we discuss in detail below. Nonetheless, we can "consider any evidence showing a likelihood of future harassment, including evidence of conduct that might not itself constitute harassment." (*R.D. v. P.M., supra,* 202 Cal.App.4th at pp. 189-190.) The emails show Dinaali's intent to continue to harass Rohani. We therefore conclude that the court had sufficient evidence to enter the restraining order.

Dinaali asserts that Rohani "never claimed prior [to the] April 10, 2014 hearing that he had been in fear of his life because of a threat of violence." This statement is inaccurate, as Rohani's application for the restraining order states that he was in fear of his life based on Dinaali's mental state. In addition, Rohani testified to Dinaali's threatening phone call after the court asked how Dinaali was a threat to him physically. Rohani's fear of Dinaali was thus properly raised in the petition and evidence of his fear was properly presented to the trial court through Rohani's testimony at the hearing.

Dinaali also argues that "even if [Dinaali] had in fact called [Rohani] and threatened to kill him . . . , it was not until February 23, 2013, three days after he had filed his application [for the civil harassment restraining order]." The timing of the threat of harm is inconsequential here, as the threat was relevant to the court's inquiry. Pursuant to section 527.6, subdivision (i), "[a]t the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry." The threat of harm was clearly relevant as to whether there was a credible threat of violence or a knowing and willful course of conduct directed at Rohani. The court thus appropriately considered it.

In addition, Dinaali argues that a single threatening phone call "does not qualify as a conduct over a period of time," sufficient to support a claim of harassment. (Underscoring omitted.) Yet, the civil harassment restraining order was not based on a single phone call. Rohani testified that Dinaali engaged in a pattern of harassing conduct,

6

which involved a disparaging website and disparaging phone calls to Rohani's clients. Dinaali admits that he published this website in February 2011, during the underlying litigation for interference with contractual relations. After Dinaali failed in his lawsuit against Rohani, Dinaali's conduct escalated when he threatened Rohani's life. Contrary to his assertions, evidence shows that Dinaali engaged in a pattern of harassing conduct for years prior to the April 2013 civil harassment restraining order hearing.

Dinaali further asserts that the court's entry of the restraining order "does not comply with the statute's element of no legitimate purpose as there was obviously a civil dispute going on." (Underscoring omitted.) Although Dinaali's emails to Rohani, however malicious, allegedly served a purpose in the civil dispute, Dinaali's remaining conduct at issue did not have a legitimate function. To serve a legitimate purpose, the conduct must be done to meet a legitimate need. (*Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 812.) Dinaali's website and contacts with Rohani's clients served no other purpose than to cause Rohani financial and emotional harm. The website and phone calls did not further the litigation objectives, nor were they a necessary part of litigation. The same is true for Dinaali's phone call to Rohani threatening to kill him. Again, there is no legitimate purpose for such a phone call or threat. Dinaali's conduct did not satisfy any legitimate need.

In sum, substantial evidence supported the court's finding of harassment and implicit finding that the harassment was likely to continue. We therefore affirm the court's entry of the restraining order.

2.      *The Litigation Privilege is Inapplicable to the Website, the Threatening Phone Call, and the Phone Calls Made to Rohani's Clients*

To the extent that Dinaali asserts that his communications and website were privileged under Civil Code section 47, subdivision (b), we disagree. Civil Code section 47, subdivision (b) creates a litigation privilege for publications and broadcasts made in a judicial or legislative proceeding. The privilege is absolute and immunizes parties from all tort liability with the exception of malicious prosecution. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 215 (*Silberg*).) The privilege applies to "any communication (1) made in

judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Id.* at p. 212.) "[T]he 'connection or logical relation[,]' which a communication must bear to litigation in order for the privilege to apply, is a *functional* connection. That is to say, the *communicative act . . .* must function as a necessary or useful step in the litigation process and must serve its purposes." (*Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1146 (*Rothman*).)

This case involves several types of communications by Dinaali:  derogatory emails to Rohani regarding the appeal, publications on a website, phone calls to Rohani's clients, and a threatening phone call directly to Rohani.  The only communications that could possibly be construed to satisfy section 47, subdivision (b)'s requirements are the emails, which addressed whether Rohani intended to be represented by counsel for the appeal.  In contrast, the other communications did not further the objectives of the litigation and lacked a logical relation to the interference with contractual relations and fraud causes of action.

For instance, Dinaali's website had no logical relationship to the court case as it did not further his ability to recover damages.  Rather, the website attacked Rohani's character and labeled him a criminal.  As we explained in *Rothman*, the litigation privilege "affords its extraordinary protection to the uninhibited airing, discussion and resolution of disputes *in, and only in, judicial or quasi-judicial arenas*. Public mudslinging, while a less physically destructive form of self-help than a public brawl, is nevertheless one of the kinds of unregulated and harmful feuding that courts and their processes exist to prevent. It would be counterproductive to afford to it the same protections which [Civil Code] section 47, subdivision (b) gives to court processes." (*Rothman, supra,* 49 Cal.App.4th at p. 1146.)  Regardless of whether the website published matters regarding the litigation, the website's mudslinging is not protected by the privilege.  Furthermore, the website is not functionally necessary or useful to the court case.  For the same reasons, the mudslinging Dinaali engaged in by calling Rohani's clients is also not protected by Civil Code section 47, subdivision (b).  Lastly,

there is no evidence that the threat of harm Dinaali made was in anyway functionally necessary or useful to the appeal.

Therefore, the litigation privilege is inapplicable to the majority of Dinaali's communicative acts at issue in this case, namely the website publications, phone calls to Rohani's clients, and the threatening phone call to Rohani. As analyzed above, there is sufficient evidence of harassment to support the court's findings and entry of the restraining order.

3.   *The Court Properly Denied Dinaali's Anti-SLAPP Motion*

Dinaali argues that the trial court erred in not granting his anti-SLAPP motion. In evaluating an anti-SLAPP motion brought under section 425.16, the trial court engages in a two-part analysis. As a threshold matter, the court determines whether the defendant has shown that the challenged cause of action arises from protected activity. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645 (*Thomas*).) Protected activity means an act in "furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) If the court finds that the defendant has met his burden, then it must assess whether the plaintiff has established a probability of prevailing on his claim. (*Thomas,* at p. 645.) A plaintiff does this by presenting evidence that establishes a prima facie case for his claim. (*Id.* at p. 662.) If the cause of action both arises out of protected conduct and lacks minimal merit, it is subject to being stricken as strategic litigation against public participation (SLAPP). (*Id.* at p. 645) "A ruling on a special motion to strike under section 425.16 is reviewed de novo." (*Thomas,* at p. 645.)

Assuming without deciding whether Dinaali's conduct arose out of protective activity, his anti-SLAPP motion must fail as the second prong of the analysis cannot be satisfied. Not only did Rohani prove that his civil harassment cause of action had merit, but he surpassed this minimal threshold requirement by succeeding on the merits of his claim and obtaining the restraining order. (*Slauson Partnership v. Ochoa* (2003) 112 Cal.App.4th 1005, 1022 [Success on the merits of the injunction satisfies the plaintiff's burden in opposing the special motion to strike]; accord, *Thomas, supra,*

9

126 Cal.App.4th at p. 664 ["the *granting* of injunctive relief can[not] be viewed as anything other than a judicial finding that the petitioner has proved a likelihood of prevailing on the claim, a prerequisite for injunctive relief."].)  We therefore affirm the court's denial of Dinaali's special motion to strike as the request for the civil harassment restraining order was meritorious.

## DISPOSITION

The restraining order is affirmed on all grounds.  Plaintiff Shariar Rohani is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

I concur:

EDMON, P. J.

ALDRICH, J.

10