Filed 1/25/24  Schumann v. Maxon CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GINA M. SCHUMANN, | |
| Plaintiff and Respondent, | G061587 |
| v. | (Super. Ct. No. 30-2022-01239317) |
| KELLY MAXON, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Stephanie George, Judge.  Affirmed.

MBK Chapman, Jason K. Boss, William D. Chapman and Jessica P. Grazul for Defendant and Appellant.

Much Shelist, Isaac R. Zfaty, Kaeleen E. N. Korenaga and Ryan N. Burns for Plaintiff and Respondent.

Kelly Maxon appeals from the trial court's order denying her special motion to strike based on the anti-SLAPP statute. (Code Civ. Proc., § 425.16.) Gina M. Schumann sued Maxon for contract interference because Maxon sent Schumann's real estate agent, Erika Schulte, a letter demanding that Schulte inform potential buyers of Schumann's condominium about Maxon's dispute with Schumann (the Schulte letter).

The trial court denied the anti-SLAPP motion because it concluded that even if Maxon had shown the Schulte letter communication was a protected activity, Schumann carried her burden to show a sufficient probability of success.

We review the motion de novo and conclude Maxon has not carried her burden to show protected activity. We affirm the order.

FACTS

I. *Noise Complaint and Listing of Property*

Schumann began living in the condominium below Maxon's in November 2020. According to Schumann's allegations, three years before Maxon moved into her unit, the previous owner of Schumann's condominium had remodeled the floor and ceiling.

In December 2020, Schumann had a gathering at her condominium and Maxon complained about the noise that came through her floor (Schumann's ceiling). Schumann, through a third party,[1] sent a response letter inviting discussion, but at the same time communicating that Schumann would not undertake any remodeling in response to Maxon's complaint.

By June 2021 (all dates without mention of the year will refer to 2021), Maxon had contacted the homeowners association that managed the community where the parties lived (the HOA). According to Schumann, Maxon requested the HOA to

---

[1] We do not distinguish between Schumann and this person in our discussion.

enforce the community's governing covenants, conditions, and restrictions to require Schumann "to install a 'sound barrier' between Maxon's floor and Schumann's ceiling."

On August 25, Schumann received a letter from Maxon's attorney. According to Schumann, the attorney "demand[ed] that Schumann install an acoustic ceiling in [her] [c]ondominium" or, in the alternative, participate in "alternative dispute resolution . . . pursuant to Civil Code section 5930."

Schumann rejected Maxon's demand for alternative dispute resolution (ADR), and, around September 10, she "decided to list [her c]ondominium for sale so that" she could buy a different property. Schumann hired Schulte to sell her condominium.

A few days later, "Schumann found [a property she wanted to purchase] and her offer was accepted contingent upon the sale of [her c]ondominium." On September 17, Schumann received an offer "for the purchase of [her c]ondominium" and Schumann accepted. Escrow was opened three days later.

II. *The Schulte Letter*

Then on September 26, "Schulte informed Schumann she had received two copies of [the Schulte letter] dated September 21 . . . from Maxon's attorney." It communicated the following to Schulte: "It is my understanding that [Schumann's condominium] is under contract for sale and you are the licensed real estate agent that listed the property for sale . . . . In the event you were not already aware, our client [i.e., Maxon] had served both the HOA and [Schumann] with a request for ADR on August 24 . . . . The serious issues in dispute presented in the mentioned ADR [d]emand letters have not been resolved and are still pending."

Central to this appeal, the Schulte letter demanded the following: "As you know, such pending and unresolved issues must be disclosed to any potential [b]uyer involved in a real property contract to purchase [Schumann's condominium]. [¶] If these

3

serious unresolved issues have not already been disclosed to the prospective [b]uyer, please consider this our formal demand that the issues presented in the attached ADR [d]emand letters be disclosed to any potential [b]uyer involved in the prospective residential real estate transaction of [Schumann's condominium]."  (Boldface omitted.)

According to an undisputed declaration filed in the trial court, about five weeks later, Schumann, "through counsel, responded . . . and rejected Maxon's demand to participate in ADR.  The HOA, on the other hand, did accept Maxon's demand to participate in ADR via letter on September 22."  Maxon did not initiate litigation against Schumann.

III.  *Schumann's Claim for Relief*

According to Schumann, her dealings with three sets of prospective buyers of her condominium were disrupted because of the Schulte letter.  Specifically, Schumann alleges they submitted contingent purchase offers but withdrew their intentions of purchasing the condominium because of the information contained in the Schulte letter.

Schumann filed this action two months after the alleged third offer was withdrawn.  She asserts a single cause of action for intentional interference with contractual relations, as follows:  "On or about September 21 . . . Maxon compiled and delivered the [Schulte letter] to Schulte and the Coldwell Banker corporate office [i.e., where Schulte worked] to ensure that the documents were provided to every single prospective buyer of Schumann's [c]ondominium.  Maxon knew that Schulte and Coldwell Banker would be obligated by their duty to disclose to provide the documents to all prospective buyers, regardless of the contents of the documents."[2]

_____

[2]  For purposes of resolving this appeal, we assume without deciding that the alleged duties to disclose were triggered.

4

Maxon filed her underlying anti-SLAPP motion with supporting declarations. Schumann's opposition included her own declaration as well as one by Schulte. As noted, the trial court denied the motion, reasoning that even if the communication of the Schulte letter had been protected by the anti-SLAPP statute, Schumann had met her burden to demonstrate a sufficient probability of success on her cause of action. (See *Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 872 ["we may conclude a contested portion of an anti-SLAPP motion should be denied solely based on a plaintiff's showing of merit, as a sufficiently meritorious claim cannot be struck regardless of whether it arises from activity the anti-SLAPP statute protects"].) In so concluding, the court rejected Maxon's contention that the Schulte letter was absolutely privileged according to Civil Code section 47, subdivision (b) (section 47(b)).

DISCUSSION

I. *Standard of Review and Anti–SLAPP Principles*

"We review de novo the grant or denial of an anti-SLAPP motion" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*)) and "construe the statute broadly" (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 864). "The procedure made available to defendants by the anti-SLAPP statute has a distinctive two-part structure. [Citations.] A court may strike a cause of action only if the cause of action [both] (1) arises from an act in furtherance of the right of petition or free speech 'in connection with a public issue,' and (2) the plaintiff has not established 'a probability' of prevailing on the claim. [Citation.]

"A defendant satisfies the first step of the analysis by demonstrating that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16 of the Code of Civil Procedure]' [citation], and that the plaintiff's claims in fact *arise* from that conduct [citation]. The four categories in subdivision (e) describe conduct '"in furtherance of a

5

person's right of petition *or* free speech under the United States or California Constitution in connection with a public issue.'" [Citation.]" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619-620 (*Rand*), second italics added.)

The only disputed category of acts at issue here is protected by Code of Civil Procedure section 425.16, subdivision (e)(2). The subdivision provides in part that "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law" is protected as an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue."

A communication that "preced[es] the filing of any suit" can qualify as conduct protected by the subdivision. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1024 (*Bonni*); *id*. at p. 1025 ["'we must give adequate "breathing space" to the right of petition'"].) The legislation authorizing anti-SLAPP motions is "'intended to end meritless SLAPP suits early without great cost to the target' [citation], not to abort potentially meritorious claims due to a lack of discovery." (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 949.)

II. *Analysis*

We review de novo whether Maxon has carried her burden to show Schumann's "challenged claims arise from protected activity." (*Park, supra*, 2 Cal.5th at p. 1067.) Maxon argues her attorney's "compil[ation] and deliver[y]" of the Schulte letter was protected activity under the anti-SLAPP statute because the conduct occurred "in connection with" an anticipated litigation before a judicial body—i.e., a court that would have adjudicated Maxon's contemplated lawsuit about noise issues involving Schumann's condominium. Maxon asserts that "the entire point of [the Schulte] letter was to give notice to prospective buyers . . . that [Schumann's condominium] did not

6

comply with [the HOA's] requirements and that any buyer would immediately become a party to Maxon's anticipated lawsuit."

A. *Anti-SLAPP Statute and Litigation Privilege Principles*

"'"[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of [section 47(b)] [citation], . . . such statements are equally entitled to the benefits of [Code of Civil Procedure] section 425.16.'" [Citation.]" (*Bonni, supra*, 11 Cal.5th at p. 1024.) Accordingly, we look to case law on section 47(b)'s litigation privilege, which provides in part that "[a] privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with [s]ection 1084) of Title 1 of Part 3 of the Code of Civil Procedure."[3]

The California Supreme Court has explained that the litigation privilege provides absolute immunity from all torts except malicious prosecution, "serves the important public policy of . . . '"assur[ing the] utmost freedom of communication between citizens and *public authorities whose responsibility is to investigate and remedy wrongdoing*' [citation]" (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360), and "has been given broad application" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 211 (*Silberg*)). Neither the "'interest of justice'" (*id.* at p. 219) nor a communicator's maliciousness (*id.* at p. 216), "motives, morals, ethics[,] or intent [citation]," should bear on the decision of whether to apply the privilege (*id.* at p. 220).

"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants

---

[3] The section then lists several caveats (§ 47(b)(1)-(5)), none of which the parties brief in this appeal.

7

authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations]" (*Silberg, supra*, 50 Cal.3d at p. 212.) The *Silberg* court explained "[t]he requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action. A good example of an application of the principle is found in the cases holding that a statement made in a judicial proceeding is not privileged unless it has some reasonable relevancy to the subject matter of the action. [Citations.]"[4] (*Silberg, supra*, at pp. 219-220.)

B. *The Litigation Privilege and* Rothman v. Jackson

An appellate court expounded on *Silberg*'s guidance in *Rothman v. Jackson* (1996) 49 Cal.App.4th 1134 (*Rothman*), a case which Schumann relies on but Maxon does not discuss. *Rothman* involved an attorney who had represented a minor who alleged tortious conduct committed by a celebrity. (*Id.* at p. 1138.) After some information about the matter became public, the celebrity called a press conference and made statements that the attorney himself subsequently sued on, claiming "conspiracy to interfere with a business relationship, defamation and intentional infliction of emotional distress." (*Id.* at p. 1139.) No actual litigation existed during the relevant time.

The celebrity and his codefendants filed a successful demurrer based on section 47(b)'s absolute privilege, but the appellate court reversed. Although the specific conclusion reached in *Rothman*—that "the litigation privilege should not be extended to 'litigating in the press'" (*Rothman, supra*, 49 Cal.App.4th at p. 1149)—is not directly

---

[4]    The *Silberg* court cited three cases for this proposition: *Washer v. Bank of America* (1943) 21 Cal.2d 822, overruled on other grounds in *MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d 536, 551; *Carpenter v. Ashley* (1906) 148 Cal. 422; and *Irwin v. Newby* (1929) 102 Cal.App. 110. The parties do not brief them.

8

applicable to this anti-SLAPP case, the appellate court's reasoning is apt for our decision on whether Maxon carried her burden to show protected activity.

The *Rothman* court reasoned that *Silberg*'s requirement of a sufficient "'connection or logical relation'" between a communication and qualifying litigation must be a "*functional* connection" where "the *communicative act*—be it a document filed with the court, a letter between counsel or an oral statement—must function as a necessary or useful step in the litigation process and must serve its purposes." (*Rothman, supra*, 49 Cal.App.4th at p. 1146.) The *Rothman* court expounded further that "if *Silberg*'s 'furtherance' test is to serve its purpose, the test can be satisfied only by communications which function intrinsically, and apart from any consideration of the speaker's intent, to advance a litigant's case." (*Id.* at p. 1148.)

C. *Functional Connection Analysis*

Maxon has not carried her burden to show how the Schulte letter met *Silberg*'s "'furtherance' test." (*Rothman, supra*, 49 Cal.App.4th at p. 1148.) Maxon cites only to the Davis-Stirling Common Interest Development Act (Civ. Code, § 4000 et seq.) to claim she had to send her ADR demand letters to Schumann and the HOA as preconditions for Maxon filing a suit covered by the authorizing statute (Civ. Code, § 5930).[5] That precondition—which was undisputedly satisfied one month before Maxon sent the Schulte letter—does not explain why *all potential* buyers of Schumann's

---

[5] Civil Code section 5930 provides: "(a) An association or a member may not file an enforcement action in the superior court unless the parties have endeavored to submit their dispute to alternative dispute resolution pursuant to this article. [¶] (b) This section applies only to an enforcement action that is solely for declaratory, injunctive, or writ relief, or for that relief in conjunction with a claim for monetary damages not in excess of the jurisdictional limits stated in [s]ections 116.220 and 116.221 of the Code of Civil Procedure. [¶] (c) This section does not apply to a small claims action. [¶] (d) Except as otherwise provided by law, this section does not apply to an assessment dispute."

property had to receive the information contained in the Schulte letter. (See *Silberg, supra*, 50 Cal.3d at p. 219 ["republications to nonparticipants in the action are generally not privileged under section 47[(b)], and are thus actionable unless privileged on some other basis"].)[6]

Maxon does not show why the Schulte letter was necessary or useful to her contemplated litigation[7] or how it promoted the litigation privilege's ultimate purpose of "assuring litigants 'the utmost freedom of access to the courts to secure and defend their rights.' [Citation.]" (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1194.) She asserts the Schulte letter "put the prospective buyer on notice that Maxon intended to bring a lawsuit against it to vindicate her rights under the HOA's governing documents." But she does not specify what legal authorities would govern claims she contemplated asserting in litigation. Within this context, we are not persuaded the Schulte letter was either necessary or useful under *Rothman*'s application of *Silberg*.

To be clear, we do not make any categorical conclusion about parties who could be situated similarly in a dispute between neighbors. That is, we leave open the possibility that a party contemplating litigation could make a sufficient showing of protected activity aimed at a potential purchaser of real property to satisfy the first step of anti-SLAPP analysis. Here, we only conclude that Maxon has not carried her burden in this particular case.

---

[6] We note that our conclusion about the absolute litigation privilege of section 47(b) for the underlying motion does not necessarily preclude application of a qualified privilege in future proceedings in the trial court. (See, e.g., Civ. Code, § 47, subd. (c).)

[7] As part of our de novo review, we do not weigh credibility and conclude that Maxon satisfied the anti-SLAPP motion requirement to show the communication at issue was made in "good faith anticipation of litigation under serious consideration at the time the statements were made." (*People ex rel. Allstate Ins. Co. v. Rubin* (2021) 66 Cal.App.5th 493, 499.)

The closest support Maxon presents is her citations to *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255 (*Neville*). In *Neville*, an attorney drafted a prelitigation letter on behalf of his client-employer about a former employee, Neville. (*Id.* at pp. 1259-1260.) The letter was sent to the employer's customers and communicated that Neville may have started a competing business and violated his contractual obligations to the employer by contacting its customers. (*Ibid.*)

The employer sued Neville who filed a cross-complaint that eventually named the attorney as a defendant, based upon the letter. (*Neville*, *supra*, 160 Cal.App.4th at p. 1260.) The attorney filed an anti-SLAPP motion against Neville's allegations that the attorney had made "'false accusations, representations, statements and comments'" in the letter. (*Ibid.*) The trial court granted the motion (*id* at. pp. 1260-1261) and the appellate court affirmed (*id.* at p. 1271).

Relevant here, the appellate court held that the attorney had carried his first step burden to show anti-SLAPP protection under Code of Civil Procedure section 425.16, subdivision (e)(2). (*Neville*, *supra*, 160 Cal.App.4th at p. 1259.) The court discussed contrasting and analogous cases to conclude the attorney's letter was sufficiently "'in connection with' the issues in [the employer's] lawsuit against Neville. [Citations.]" (*Id*. at p. 1268.) The court pointed out three aspects of the letter at issue: (1) it "related directly to [the employer]'s claims for breach of contract and misappropriation of trade secrets against Neville"; (2) it "was directed to [the employer]'s current and former customers—persons whom [the employer] reasonably could believe had an interest in the dispute as potential witnesses . . . or unwitting participants"; and (3) it "constituted an attempt to prevent further misuse of [the employer]'s proprietary information, and thereby mitigate [the employer]'s potential damage." (*Id*. at pp. 1267-1268.)

*Neville* did not mention *Rothman* but *Neville*'s reasoning does not contradict *Rothman*'s functional connection test. Applying the test to the letter in *Neville* highlights the third point above as the most salient part of *Neville*'s analysis. That is, the letter there functioned as a way of advancing the employer's case for damages in the future. (See *Agam v. Gavra* (2015) 236 Cal.App.4th 91, 111 [under mitigation of damages doctrine, "plaintiff may not recover for damages avoidable through ordinary care and reasonable exertion"].) Here, as noted, Maxon does not show what litigation value the Schulte letter advanced. *Rothman*'s test demonstrates the overbroadness of Maxon's assertion that "[s]tatements need not be made directly to a party but *are* protected if they were made to a potential witness or even an unwittingly interested bystander." (Italics added.)

*Neville* neither contradicts the soundness of *Rothman*'s reasoning, which we apply here, nor does *Neville* dissuade us from concluding that Maxon has not shown the Schulte letter was absolutely privileged under section 47(b) or otherwise protected activity under Code of Civil Procedure section 425.16, subdivision (e)(2). Given our conclusion on the first step of anti-SLAPP analysis, there is no need to analyze whether Schumann made a showing of sufficient probability for the merits of her claim.[8]

---

[8] We do note that in *Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1145, not briefed by the parties, the California Supreme Court analyzed the "broader logic" applicable to a contract interference cause of action based on an at-will contract for employment. (See *id.* at p. 1148 [discussing "independent wrongfulness requirement" traditionally required only for interference with prospective economic advantage causes of action].) Based on the briefing presented here, the high court's reasoning for treating an at-will contract differently from more "cemented economic relationship[s]" (*id.* at pp. 1145, 1146) appears relevant to the nature of the "residential purchase agreement" (capitalization omitted) Schumann relies on in her allegations.

12

## DISPOSITION

The order denying the anti-SLAPP motion is affirmed. Respondent shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


O'LEARY, P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.