50 Cal.3d 205 (1990)
786 P.2d 365
266 Cal. Rptr. 638
BARRY NEIL SILBERG, Plaintiff and Appellant,
v.
MARGARET ANDERSON, Defendant and Respondent.
Docket No. S007056.
Supreme Court of California.
February 26, 1990.
*209 COUNSEL
William B. Daniels II and Laurie Richard Shoch for Plaintiff and Appellant.
Moore, Clifford, Wolfe, Larson & Trutner, Peter Dixon, Tammy L. O'Leary, Kornblum, Kelly & Herlihy, Kornblum & McBride and William B. Boone for Defendant and Respondent.
Proskauer, Rose, Goetz & Mendelsohn and Steven G. Drapkin as Amici Curiae on behalf of Defendant and Respondent.
OPINION
KAUFMAN, J.[*]
We granted review in this case to resolve an apparent conflict in decisions of the Courts of Appeal regarding the nature and scope of the "litigation privilege" found in Civil Code section 47, subdivision 2.[1] We conclude that the decision of the Court of Appeal in the instant case, and the line of cases on which it relied in adopting the so-called "interest of justice" test, are inconsistent with the absolute nature of the litigation privilege and its underlying policy purposes. We therefore disapprove the line of cases employing the "interest of justice" test and reverse the judgment of the Court of Appeal with directions to reinstate the judgment of dismissal issued by the trial court.

*210 I
This action arises from a marital dissolution proceeding in which defendant, Margaret Anderson, was the attorney for the wife of Barry Silberg (hereafter husband), the plaintiff in this action. (1) The following facts are derived from the complaint since, under settled law, we assume the truth of all properly pleaded material allegations of the complaint (Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 170 [164 Cal. Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]; Alcorn v. Anbro Engineering, Inc. (1970) 2 Cal.3d 493, 496 [86 Cal. Rptr. 88, 468 P.2d 216]) and give the complaint a reasonable interpretation by reading it as a whole and its parts in their context (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal. Rptr. 718, 703 P.2d 58]).
During the course of the dissolution proceedings, the husband asked his attorney to obtain an agreement from the wife that all family members would submit to psychological evaluation and counseling to be conducted by a "mutually agreeable and independent" psychologist for the purpose of determining appropriate visitation and custody arrangements. The parties' attorneys subsequently stipulated to proceed in that fashion and, upon the recommendation of Attorney Anderson and with the approval of husband's attorney, a psychologist, Dr. Robert Adler, was selected to perform the psychological evaluation and counseling. Although the record does not disclose the results of the psychological evaluation, the psychologist's recommendations for custody and visitation arrangements or the court orders resulting from the proceeding, the overall result was apparently adverse to the husband.
Subsequently, husband instituted this action against Attorney Anderson (hereafter defendant), as well as his own attorney,[2] claiming damages for breach of contract, negligence and "intentional tort" (apparently intentional infliction of emotional distress or intentional misrepresentation). Husband's claims are based upon allegations that, contrary to defendant's representation that the psychologist recommended by her was independent and neutral, Dr. Adler was a person with whom she had an unspecified preexisting relationship, the existence and nature of which she allegedly failed to disclose to husband's attorney. Husband claims defendant subsequently used her undisclosed relationship with Dr. Adler to influence him to the wife's advantage in the psychological evaluation of the Silberg family members. Husband further alleges that, due to defendant's influence, Dr. Adler produced a report that "was biased, wholly inaccurate and defamatory." *211 Husband asserts that defendant's breach of contract, negligence, negligent misrepresentation, and "intentional tort" caused him the loss of reasonable visitation arrangements with his children, damage to his reputation in the community and emotional distress. He seeks both compensatory and punitive damages.
Defendant demurred to the complaint, urging that husband had failed to state facts sufficient to constitute a cause of action against her because her statements during the litigation were privileged under section 47(2). The trial court sustained the demurrer to all causes of action without leave to amend and entered a judgment of dismissal as to defendant.
Husband appealed from the judgment. The Court of Appeal affirmed the judgment of dismissal as to all other causes of action but reversed as to the fifth cause of action, denominated "intentional tort," and remanded to the trial court with directions to issue a new order sustaining the demurrer with leave to amend as to that cause of action.[3] The Court of Appeal concluded defendant's representations were not privileged under section 47(2) if they were made to achieve personal objectives or to gain an advantage for her client through artifice or deceit, reasoning that in that case they could not have been made to promote the "interest of justice." The court further reasoned that whether the statements were made for such purposes was a question of fact not subject to resolution on demurrer. Accordingly, the Court of Appeal determined that husband should be allowed to amend his "intentional tort" cause of action to allege an "improper objective in the procurement of Dr. Adler's services," which, under its reasoning, would preclude application of section 47(2) and allow husband to proceed on that cause of action.
Defendant petitioned for review, asserting, in essence, that the privilege delineated in section 47(2) is absolute in nature and applies to all torts save malicious prosecution, and that the Court of Appeal decision, and the line of decisions upon which it relied for its "interest of justice" test, are inconsistent with the absolute nature of the privilege and its underlying policy purposes. We granted review and now confront the question whether the privilege under section 47(2) is subject to an "interest of justice" exception.

II
In furtherance of the public policy purposes it is designed to serve, the privilege prescribed by section 47(2) has been given broad application. *212 Although originally enacted with reference to defamation (see Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc. (1986) 42 Cal.3d 1157, 1163 [232 Cal. Rptr. 567, 728 P.2d 1202]), the privilege is now held applicable to any communication, whether or not it amounts to a publication (see, e.g., Rosenthal v. Irell & Manella (1982) 135 Cal. App.3d 121, 126 [185 Cal. Rptr. 92]; Block v. Sacramento Clinical Labs, Inc. (1982) 131 Cal. App.3d 386, 390 [182 Cal. Rptr. 438]; Lerette v. Dean Witter Organization, Inc. (1976) 60 Cal. App.3d 573, 577 [131 Cal. Rptr. 592]), and all torts except malicious prosecution. (Albertson v. Raboff (1956) 46 Cal.2d 375, 382 [295 P.2d 405]; Kilgore v. Younger (1982) 30 Cal.3d 770, 778 [180 Cal. Rptr. 657, 640 P.2d 793]; Block v. Sacramento Clinical Labs, Inc., supra, 131 Cal. App.3d 386, 390-392; Pettitt v. Levy (1972) 28 Cal. App.3d 484, 489 [104 Cal. Rptr. 650].) Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. (Albertson v. Raboff, supra, 46 Cal.2d 375, 381; Rosenthal v. Irell & Manella, supra, 135 Cal. App.3d 121, 126; Pettitt v. Levy, supra, 28 Cal. App.3d 484, 489.)
The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. (See, e.g., Green v. Uccelli (1989) 207 Cal. App.3d 1112, 1124 [255 Cal. Rptr. 315]; Carney v. Rotkin, Schmerin & McIntyre (1988) 206 Cal. App.3d 1513, 1521 [254 Cal. Rptr. 478]; Walsh v. Bronson (1988) 200 Cal. App.3d 259, 269 [245 Cal. Rptr. 888]; Financial Corp. of America v. Wilburn (1987) 189 Cal. App.3d 764, 772-773 [234 Cal. Rptr. 653]; Chen v. Fleming (1983) 147 Cal. App.3d 36, 41 [194 Cal. Rptr. 913]; Hagendorf v. Brown (9th Cir.1983) 699 F.2d 478, 480.)
However, a line of cases decided in the Courts of Appeal would carve out an exception to the privilege prescribed by section 47(2) for those communications not made for the purpose of promoting the "interest of justice." (See Bradley v. Hartford Acc. & Indem. Co. (1973) 30 Cal. App.3d 818, 826 [106 Cal. Rptr. 718]; Kinnamon v. Straitman & Snyder (1977) 66 Cal. App.3d 893, 897 [136 Cal. Rptr. 321]; Earp v. Nobmann (1981) 122 Cal. App.3d 270, 284 [175 Cal. Rptr. 767]; Barbary Coast Furniture Co. v. Sjolie (1985) 167 Cal. App.3d 319, 333 [213 Cal. Rptr. 168]; Fuhrman v. California Satellite Systems (1986) 179 Cal. App.3d 408, 421 [231 Cal. Rptr. 113]; McKnight v. Faber (1986) 185 Cal. App.3d 639, 649 [230 Cal. Rptr. 57].) In the instant case, the Court of Appeal applied this "interest of justice" test in holding that the pleadings gave rise to disputed questions of fact.
*213 It is, of course, true that "justice," in the sense of "fairness," is not served where an attorney seeks to deceive a party into relying on an expert by misrepresenting the expert's impartiality. However, the evils inherent in permitting derivative tort actions based on communications during the trial of a previous action are, as we explain below, far more destructive to the administration of justice than an occasional "unfair" result. Accordingly, we disapprove the decisions announcing or employing the "interest of justice" rule to the extent they are inconsistent with this opinion.

III.

1. Policies Furthered by Section 47(2)

(2) The principal purpose of section 47(2) is to afford litigants and witnesses (see Pettitt v. Levy, supra, 28 Cal. App.3d at p. 488) the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. (Albertson v. Raboff, supra, 46 Cal.2d at p. 380, citing Veeder, Absolute Immunity in Defamation: Judicial Proceedings (1909) 9 Colum.L.Rev. 463, 469; accord Ribas v. Clark (1985) 38 Cal.3d 355, 364-365 [212 Cal. Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417].)
Section 47(2) promotes the effectiveness of judicial proceedings by encouraging "open channels of communication and the presentation of evidence" in judicial proceedings. (McClatchy Newspapers, Inc. v. Superior Court (1987) 189 Cal. App.3d 961, 970 [234 Cal. Rptr. 702].) A further purpose of the privilege "is to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing." (Imig v. Ferrar (1977) 70 Cal. App.3d 48, 55 [138 Cal. Rptr. 540]; Tiedemann v. Superior Court (1978) 83 Cal. App.3d 918, 925 [148 Cal. Rptr. 242].) Such open communication is "a fundamental adjunct to the right of access to judicial and quasi-judicial proceedings." (Pettitt v. Levy, supra, 28 Cal. App.3d at pp. 490-491.) Since the "external threat of liability is destructive of this fundamental right and inconsistent with the effective administration of justice" (McClatchy Newspapers, Inc. v. Superior Court, supra, 189 Cal. App.3d at p. 970), courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings.
In a decision that applied a similar common law litigation privilege, the United States Supreme Court echoed these policy considerations: "`the dictates of public policy ... require[] that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible' [citation]." (Briscoe v. LaHue (1983) 460 U.S. 325, 333 [75 L.Ed.2d 96, 106, *214 103 S.Ct. 1108].) Thus, witnesses should be free from the fear of protracted and costly lawsuits which otherwise might cause them either to distort their testimony or refuse to testify altogether. (Ibid.; Pettitt v. Levy, supra, 28 Cal. App.3d at pp. 490-491.)
Section 47(2) further promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests. "[I]t is desirable to create an absolute privilege ... not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions...." (Thornton v. Rhoden (1966) 245 Cal. App.2d 80, 99 [53 Cal. Rptr. 706, 23 A.L.R.3d 1152].)
Finally, in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result. (Kachig v. Boothe (1971) 22 Cal. App.3d 626, 640-641 [99 Cal. Rptr. 393]; see also Pico v. Cohn (1891) 91 Cal. 129 [25 P. 170, 27 P. 537].) The instant case is an example in point. During the dissolution proceedings, the husband had every opportunity to challenge the validity of Dr. Adler's psychological evaluation and recommendations. He could have engaged another psychologist, attempted to impeach the credibility of Dr. Adler by showing bias, or attacked the evaluation and recommendations in other ways using standard litigation techniques. Having failed to do so during the dissolution proceedings, however, husband now seeks to sue his former wife's attorney for money damages allegedly caused by the use of the assertedly biased and inaccurate report after finality of the dissolution decree.
For our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause during the proceedings. To allow a litigant to attack the integrity of evidence after the proceedings have concluded, except in the most narrowly circumscribed situations, such as extrinsic fraud, would impermissibly burden, if not inundate, our justice system. (Briscoe v. LaHue, supra, 460 U.S. 325, 333 [75 L.Ed.2d 96, 106]; Pico v. Cohn, supra, 91 Cal. 129; Kachig v. Boothe, supra, 22 Cal. App.3d 626, 641.)
Given the importance to our justice system of ensuring free access to the courts, promoting complete and truthful testimony, encouraging zealous advocacy, giving finality to judgments, and avoiding unending litigation, it is not surprising that section 47(2), the litigation privilege, has been referred *215 to as "the backbone to an effective and smoothly operating judicial system." (McClatchy Newspapers, Inc. v. Superior Court, supra, 189 Cal. App.3d at p. 970.)

2. The Absolute Nature of the Litigation Privilege Under Section 47(2)

To effectuate its vital purposes, the litigation privilege is held to be absolute in nature. (Ribas v. Clark, supra, 38 Cal.3d at p. 364; Albertson v. Raboff, supra, 46 Cal.2d at p. 381; Carden v. Getzoff (1987) 190 Cal. App.3d 907, 914 [235 Cal. Rptr. 698]; Financial Corp. of America v. Wilburn, supra, 189 Cal. App.3d at p. 771; McClatchy Newspapers, Inc. v. Superior Court, supra, 189 Cal. App.3d at p. 971; O'Neil v. Cunningham (1981) 118 Cal. App.3d 466, 475 [173 Cal. Rptr. 422]; Thornton v. Rhoden, supra, 245 Cal. App.2d at p. 86.) In Albertson, Justice Traynor, speaking for the court, reasoned that the policy of encouraging free access to the courts was so important as to require application of the privilege to torts other than defamation. (Albertson v. Raboff, supra, 46 Cal.2d at p. 381; see Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., supra, 42 Cal.3d at p. 1164.) Accordingly, in the years since Albertson, section 47(2) has been held to immunize defendants from tort liability based on theories of abuse of process (Drasin v. Jacoby & Myers (1984) 150 Cal. App.3d 481 [197 Cal. Rptr. 768]; Rosenthal v. Irell & Manella, supra, 135 Cal. App.3d 121; Asia Investment v. Borowski (1982) 133 Cal. App.3d 832 [184 Cal. Rptr. 317, 30 A.L.R.4th 561]; Umansky v. Urquhart (1978) 84 Cal. App.3d 368 [148 Cal. Rptr. 547]; Twyford v. Twyford (1976) 63 Cal. App.3d 916 [134 Cal. Rptr. 145]; Younger v. Solomon (1974) 38 Cal. App.3d 289 [113 Cal. Rptr. 113]; Thorton v. Rhoden, supra, 245 Cal. App.2d 80, 99; but see Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., supra, 42 Cal.3d at p. 1165), intentional infliction of emotional distress (Ribas v. Clark, supra, 38 Cal.3d 355; Rosenthal v. Irell & Manella, supra, 135 Cal. App.3d 121; Lerette v. Dean Witter Organization, Inc., supra, 60 Cal. App.3d 573; Pettitt v. Levy, supra, 28 Cal. App.3d 484; Kachig v. Boothe, supra, 22 Cal. App.3d 626; Agostini v. Strycula (1965) 231 Cal. App.2d 804 [42 Cal. Rptr. 314]), intentional inducement of breach of contract (Rosenthal v. Irell & Manella, supra, 135 Cal. App.3d 121; Agostini v. Strycula, supra, 231 Cal. App.2d 804), intentional interference with prospective economic advantage (Rosenthal v. Irell & Manella, supra, 135 Cal. App.3d 121), negligent misrepresentation (Pettitt v. Levy, supra, 28 Cal. App.3d 484), invasion of privacy (Ribas v. Clark, supra, 38 Cal.3d 355), negligence (Pettitt v. Levy, supra, 28 Cal. App.3d 484) and fraud (Carden v. Getzoff, supra, 190 Cal. App.3d 907; Steiner v. Eikerling (1986) 181 Cal. App.3d 639, 642-643 [226 Cal. Rptr. 694]; Portman v. George McDonald Law Corp. (1979) 99 Cal. App.3d 988, 989-990 [160 Cal. Rptr. 505]; Pettitt v. *216 Levy, supra, 28 Cal. App.3d 484; Kachig v. Boothe, supra, 22 Cal. App.3d 626). (3) The only exception to application of section 47(2) to tort suits has been for malicious prosecution actions. (Ribas v. Clark, supra, 38 Cal.3d at p. 364; Kilgore v. Younger, supra, 30 Cal.3d at p. 778; Carden v. Getzoff, supra, 190 Cal. App.3d at p. 913; Pettitt v. Levy, supra, 28 Cal. App.3d at p. 489.) Malicious prosecution actions are permitted because "[t]he policy of encouraging free access to the courts ... is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied." (Albertson v. Raboff, supra, 46 Cal.2d at p. 382.)
That the privilege is absolute is also confirmed by the statutory language. (4) As amended in 1927[4] by the addition of the "divorce proviso," section 47(2) provided that an allegation involving corespondents in pleadings and affidavits filed in divorce actions is not privileged unless stated under oath, without malice, and on reasonable grounds. (Stats. 1927, ch. 866, § 1, p. 1881.)[5] By negative implication, therefore, statements published in proceedings other than divorce actions may be malicious and still fall within the mantle of protection provided by the privilege. Were it otherwise, the "without malice" language in the "divorce proviso" would be mere surplusage. Since we presume that the Legislature does not engage in idle acts (Stafford v. Realty Bond Service Corp. (1952) 39 Cal.2d 797, 805 [249 P.2d 241]; General American Transportation Corp. v. State Bd. of Equalization (1987) 193 Cal. App.3d 1175, 1181 [238 Cal. Rptr. 865]), it must be concluded that the "without malice" requirement applies only to those allegations against corespondents published in the pleadings and affidavits filed in dissolution proceedings, and that otherwise the Legislature intended section 47(2) to apply to all publications, irrespective of their maliciousness.

3. The "Interest of Justice" Test

The "interest of justice" test appears to have originated with Bradley v. Hartford Acc. & Indem. Co., supra, 30 Cal. App.3d 818. The Bradley court stated: "[I]n determining whether or not the defamatory publication should be accorded an absolute privilege, special emphasis must be laid on the requirement that it be made in furtherance of the litigation and to promote the interest of justice. Only if this requirement has been satisfied, is it appropriate for the courts to define liberally the scope of the term `judicial *217 proceeding' and the persons who should be regarded as litigants or other participants." (Id. at p. 826, italics in original.)
Thus, the Bradley court read into the requirement that the communication be made "to achieve the objects of the litigation" the additional requirement that the communication must have also been made for the purpose of promoting the "interest of justice." Actually, the Bradley court's announcement of the "interest of justice" test was wholly unnecessary to its decision. The court had already concluded that both the communicator and the communicatee were strangers to the action (neither parties, prospective witnesses nor attorneys in the action), and that the communication was not reasonably related to the action. Either of these conclusions was ample basis for holding that the communication was not privileged without resort to any "interest of justice" test.
Moreover, while the added moral consideration injected by the Bradley court may seem attractive, on further reflection it is seen to be a drastic departure from precedent and largely destructive of the principal purpose of the litigation privilege. It would permit derivative tort suits in many, if not most, cases on the ground that an otherwise privileged communication was not made for the purpose of promoting justice, a charge easily and quickly made by an adversary.
The "interest of justice" test, as adopted in Bradley, has been criticized and indeed rejected in a number of decisions by sister Courts of Appeal. (ITT Telecom Products Corp. v. Dooley (1989) 214 Cal. App.3d 307 [262 Cal. Rptr. 773]; Green v. Uccelli, supra, 207 Cal. App.3d 1112; Financial Corp. of America v. Wilburn, supra, 189 Cal. App.3d 764; McClatchy Newspapers, Inc. v. Superior Court, supra, 189 Cal. App.3d 961; O'Neil v. Cunningham, supra, 118 Cal. App.3d 466.)
Nevertheless, a number of Court of Appeal decisions appear to have embraced the "interest of justice" requirement, either linguistically or substantively. (See Kinnamon v. Straitman & Snyder, supra, 66 Cal. App.3d at p. 897; Earp v. Nobmann, supra, 122 Cal. App.3d at pp. 284-285; Barbary Coast Furniture Co. v. Sjolie, supra, 167 Cal. App.3d at p. 334; McKnight v. Faber, supra, 185 Cal. App.3d at p. 650; Fuhrman v. California Satellite Systems, supra, 179 Cal. App.3d at p. 421.)
We also observe, however, that in many of the decisions purporting to utilize the "interest of justice" test, the court could have reached the same result, no privilege, on the basis of the absence of one of the traditionally recognized factors. (See, e.g. McKnight v. Faber, supra, 185 Cal. App.3d at p. 650 [the immunity of section 47(2) does not apply to conduct but is *218 limited to communications]; Fuhrman v. California Satellite Systems, supra, 179 Cal. App.3d at p. 421 [factual question existed as to whether the potential lawsuit was actually contemplated]; Earp v. Nobmann, supra, 122 Cal. App.3d at p. 285 [communication had no logical relation to the action].)
(5a) We conclude that the well-intentioned addition of the "interest of justice" test must be rejected. A rule that an otherwise privileged communication is not privileged under section 47(2) unless made for the purpose of promoting the "interest of justice" is wholly inconsistent with the numerous cases in which fraudulent communications or perjured testimony have nevertheless been held privileged. (E.g., Carden v. Getzoff, supra, 190 Cal. App.3d at p. 915; Steiner v. Eikerling, supra, 181 Cal. App.3d 639, 642-643; Portman v. George McDonald Law Corp., supra, 99 Cal. App.3d 988, 989-990; Pettitt v. Levy, supra, 28 Cal. App.3d 484; Kachig v. Boothe, supra, 22 Cal. App.3d 626.) Obviously, such a test would also be contrary to the decisions in which liability for abuse of process is held precluded by the privilege. (Drasin v. Jacoby & Myers, supra, 150 Cal. App.3d 481; Rosenthal v. Irell & Manella, supra, 135 Cal. App.3d 121; Asia Investment v. Borowski, supra, 133 Cal. App.3d 832; Umansky v. Urquhart, supra, 84 Cal. App.3d 368; Twyford v. Twyford, supra, 63 Cal. App.3d 916; Younger v. Solomon, supra, 38 Cal. App.3d 289.) One of the two necessary elements of that tort is an ulterior purpose. (Templeton Feed & Grain v. Ralston Purina Co. (1968) 69 Cal.2d 461 [72 Cal. Rptr. 344, 446 P.2d 152].) Finally, endorsement of the "interest of justice" requirement would be tantamount to the exclusion of all tortious publications from the privilege, because tortious conduct is invariably inimical to the "interest of justice." Thus, the exception would subsume the rule.
It is thus clear that the Court of Appeal in the instant case lacked persuasive authority to hold defendant's communications unprivileged on the theory they may not have been made for the purpose of advancing the "interest of justice." The salutary policy reasons for an absolute privilege supersede individual litigants' interests in recovering damages for injurious publications made during the course of judicial proceedings.
We recognize, as have applicable precedents, that the disallowance of derivative tort actions based on communications of participants in an earlier action necessarily results in some real injuries that go uncompensated. But, as stated in Kachig v. Boothe, supra, 22 Cal. App.3d at page 641, quoting Prosser, Law of Torts (3d ed. 1964) page 797, that is the "`price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say.'"
We observe, however, that in a good many cases of injurious communications, other remedies aside from a derivative suit for compensation will exist *219 and may help deter injurious publications during litigation. Examples of these remedies include criminal prosecution for perjury (Pen. Code, § 118 et seq.) or subornation of perjury (Pen. Code, § 653f, subd. (a)); criminal prosecution under Business and Professions Code, section 6128;[6] and State Bar disciplinary proceedings for violation of Business and Professions Code, section 6068, subdivision (d).[7] (6) Finally, republications to nonparticipants in the action are generally not privileged under section 47(2), and are thus actionable unless privileged on some other basis.
(5b) To the extent inconsistent with this opinion, those decisions employing the "interest of justice" test are disapproved. These decisions include: Bradley v. Hartford Acc. & Indem. Co., supra, 30 Cal. App.3d at p. 826; Kinnamon v. Straitman & Snyder, supra, 66 Cal. App.3d at p. 897; Earp v. Nobmann, supra, 122 Cal. App.3d at pp. 284-285; Barbary Coast Furniture Co. v. Sjolie, supra, 167 Cal. App.3d at p. 334; McKnight v. Faber, supra, 185 Cal. App.3d at p. 650; and Fuhrman v. California Satellite Systems, supra, 179 Cal. App.3d at p. 421.

IV
(7a) It remains only to apply the usual four-part test to husband's fifth cause of action, to determine if defendant's statements as to the psychologist's neutrality and independence were privileged under section 47(2).
As alleged in the complaint, the stipulation to retain a psychologist, and the discussion as to the specific psychologist to retain, occurred in the course of the marital dissolution proceeding. Defendant's statements regarding Dr. Adler's suitability were made by a participant, i.e., the attorney for a party. They were "reasonably related" to the action because custody and visitation arrangements are integral to all marital dissolution proceedings in which children are involved. (See § 4600 et seq.) Moreover, where custody and visitation arrangements are contested issues, the state requires that mediation be conducted by a qualified counselor (§ 4607; Code Civ. Proc., § 1745) who is directed to perform an evaluation and formulate recommendations if not sought voluntarily by the parties to the dissolution.
(8) The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that *220 the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action. A good example of an application of the principle is found in the cases holding that a statement made in a judicial proceeding is not privileged unless it has some reasonable relevancy to the subject matter of the action. (E.g. Washer v. Bank of America (1943) 21 Cal.2d 822 [136 P.2d 297, 155 A.L.R. 1338]; Carpenter v. Ashley (1906) 148 Cal. 422 [83 P. 444]; Irwin v. Newby (1929) 102 Cal. App. 110 [282 P. 810].) The "furtherance" requirement was never intended as a test of a participant's motives, morals, ethics or intent. (See Financial Corp. of America v. Wilburn, supra, 189 Cal. App.3d at p. 777; Thornton v. Rhoden, supra, 245 Cal. App.2d at pp. 93-94.)
(7b) Accordingly, it is clear that defendant's statements furthered the objects of the litigation and fall within the scope of the litigation privilege. The statements were made in the context of a judicial proceeding, were logically related to the action, played an integral role in the proceeding, and were made by one of the participants about an authorized participant. The privilege of section 47(2) plainly applies. (Green v. Uccelli, supra, 207 Cal. App.3d at p. 1124; Walsh v. Bronson, supra, 200 Cal. App.3d at p. 269.)

V
For the foregoing reasons, the judgment of the Court of Appeal is reversed as to the fifth cause of action with directions to reinstate the order of dismissal issued by the trial court as to all causes of action asserted against defendant Anderson.
Lucas, C.J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., and Kennard, J., concurred.
On March 12, 1990, the opinion was modified to read as printed above.
NOTES
[*] Retired Associate Justice of the Supreme Court sitting under assignment by the Acting Chairperson of the Judicial Council.
[1] All statutory references are to the Civil Code unless otherwise indicated. For convenience, we will refer to section 47, subdivision 2, as section 47(2).

Section 47(2) provides in relevant part: "A privileged publication or broadcast is one made  [¶] 2. In any ... (2) judicial proceeding ... provided, that an allegation or averment contained in any pleading or affidavit filed in an action for divorce ... made of or concerning a person by or against whom no affirmative relief is prayed in such action shall not be a privileged publication or broadcast as to the person making said allegation or averment within the meaning of this section unless such pleading be verified or affidavit sworn to, and be made without malice, by one having reasonable and probable cause for believing the truth of such allegation or averment and unless such allegation or averment be material and relevant to the issues in such action."
[2] Although plaintiff's attorney is named as a defendant in the complaint, he is not a party to this appeal. Only the sufficiency of the allegations against defendant Anderson are at issue here.
[3] The Court of Appeal construed husband's "intentional tort" claim as being one only for intentional infliction of emotional distress. Although the facts alleged in the complaint would also appear to support a theory of fraud, under our holding in this case that question need not be addressed.
[4] For a thorough review of the history of the development of section 47(2), see Comment, Absolute Privilege and California Civil Code Section 47(2): A Need for Consistency (1982) 14 Pacific L.J. 105.
[5] Under our modern dissolution of marriage laws, where fault is no longer a relevant issue, "the divorce proviso" may well be an unnecessary anachronism. In any event, however, our analysis of legislative intent is not thereby affected.
[6] Business and Professions Code section 6128 provides in relevant part: "Every attorney is guilty of a misdemeanor who ... is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive ... any party."
[7] That section and subdivision impose a duty on attorneys to "employ ... such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by any artifice or false statement of fact or law."