Filed 4/22/26  Potter v. Barenholtz CA2/4
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JESSE ROBERT POTTER,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRETT BARENHOLTZ,<br><br>    Defendant and Appellant. | B338369<br><br>(Los Angeles County<br> Super. Ct. No. 23STCV28751) |

APPEAL from an order of the Superior Court of Los Angeles County, Richard L. Fruin, Judge.  Affirmed in part and reversed in part with directions.

Shapero & Shapero and Steven J. Shapero; Bruce Adelstein for Defendant and Appellant.

Hayes Litigation and Daniel M. Hayes for Plaintiff and Respondent.

**INTRODUCTION**

Here we join a long line of appellate cases in holding that the litigation privilege under Civil Code section 47 bars derivative tort claims based on allegations of extrinsic fraud. Plaintiff filed suit against defendant, asserting both equitable and tort claims stemming from plaintiff's eviction from a condominium pursuant to a default judgment obtained in unlawful detainer proceedings. In this civil action, plaintiff alleges that the default judgment and subsequent writ of possession in the prior unlawful detainer action were obtained through defendant's extrinsic fraud.

In response, defendant filed a special motion to strike under our anti-SLAPP statute, arguing that the plaintiff's claims were barred by the litigation privilege. (Code Civ. Proc., § 425.16.)[1] The trial court denied the motion and awarded plaintiff his attorneys' fees under section 425.16, subdivision (c)(1). Defendant now appeals, arguing the trial court erred in concluding that plaintiff's tort claims were not barred by the litigation privilege. We agree and reverse the trial court's ruling as to plaintiff's tort claims. As we determine that defendant's anti-SLAPP motion had merit, we also reverse the trial court's award of attorneys' fees to plaintiff.

---

[1] The term "SLAPP" stands for strategic lawsuit against public participation. All further statutory references are to the Code of Civil Procedure unless otherwise specified.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.     *Parties and Background*

Plaintiff Jesse Potter (Jesse)[2] is a developmentally disabled adult.[3] Jesse lived with his mother, Rosana Potter (Rosana), in a Van Nuys condominium. In 2006, Rosana established a revocable trust (the Potter trust) and transferred her interest in the Van Nuys condominium to the trust. The trust named Jesse and his sister, Annabelle Potter Krishel (Annabelle), as beneficiaries. The trust also designated Annabelle as the successor trustee upon Rosana's death. Using a power of attorney she acquired over Rosana, Annabelle subsequently designated attorney Brett Barenholtz (Barenholtz) to act as successor trustee. Rosana died in August 2018.

Following Rosana's death, Jesse lived alone in the Van Nuys condominium. According to Barenholtz, the results were disastrous, and the condominium fell into disrepair, rendering it uninhabitable. Among the issues were extensive piles of trash littering the condominium, water damage caused by leaks, as well as cockroaches, mold, and noxious odors. Additionally, foreclosure notices were filed against the property stemming from Jesse's failure to pay the mortgage or homeowners' association fees for the condominium.

---

[2]     As this case involves multiple members of the Potter family who share a last name, we refer to certain parties by first name for clarity. No disrespect is intended.

[3]     The precise nature and severity of this disability has not been established in the record before us, but it appears to be undisputed that he was born with an autistic spectrum disorder even if no formal medical diagnosis appears in the record.

II.    *Unlawful Detainer Action*

In May 2023, Barenholtz, through his retained counsel Michael Simkin (Simkin), filed an unlawful detainer action seeking to evict Jesse from the Van Nuys condominium.  In the unlawful detainer complaint, Barenholtz asserted that Jesse agreed to rent the Van Nuys condominium as an at-will tenant.  The complaint alleged Jesse breached the terms of his rental agreement by refusing to provide Barenholtz access to the property to perform maintenance.  The complaint did not mention the Potter trust or that Jesse suffered from a developmental disability.  When Jesse did not respond to the unlawful detainer complaint, Barenholtz obtained a default judgment against him for possession of the condominium.

In July 2023, while he was in the process of obtaining the default judgment against Jesse in the unlawful detainer action, Barenholtz filed a petition in the probate division of the Los Angeles Superior Court seeking to be appointed as Jesse's conservator.  The form petition filed by Barenholtz checked a box indicating that Jesse had "a developmental disability as defined in Probate Code section 1420."  Barenholtz signed the petition under penalty of perjury.

In a supplement to his conservatorship petition, Barenholtz represented, under penalty of perjury, that Jesse was "developmentally disabled from birth with the autistic spectrum disorder known as Asperger's Syndrome, which impacts his social and societal interactions and limits his ability to properly care for himself.  He has perception and comprehension problems.  He does not fully understand the consequences of his actions and behavior."

In November 2023, Barenholtz had the Los Angeles Sheriff's Department execute the writ of possession he obtained through the default

4

judgment in the unlawful detainer action. Jesse was removed from the condominium.

Shortly thereafter, Jesse obtained counsel and filed an ex parte application to vacate the default judgment in the unlawful detainer action. Jesse argued that Barenholtz and Simkin improperly obscured the fact that Jesse was developmentally disabled from the unlawful detainer court. Jesse asked the court to vacate the default judgment and restore his access to the condominium. The court granted the application and vacated the default judgment. However, the court determined that it could not recall the writ of possession and restore Jesse to the condominium because it lost the jurisdiction to do so once the writ of possession was executed by the Sheriff's Department.[4] Jesse subsequently brought a motion in the unlawful detainer action asking the court to restore his possession of the condominium following the vacatur of the default judgment. On May 28, 2025, the unlawful detainer court denied Jesse's motion.

## III. *The Instant Litigation*

Jesse then filed suit against Barenholtz and Simkin. Jesse's complaint asserted eight causes of action against them for dependent adult abuse, trespass, conversion, trespass to chattels, negligence, accounting, quiet title, and declaratory relief.

---

[4] Barenholtz and Potter both appealed the order to the Appellate Division of the Superior Court. Barenholtz challenged the unlawful detainer court's decision to vacate the default judgment. Potter challenged the court's determination that it could not recall the writ of possession and restore him to the condominium. On February 25, 2025, the Appellate Division filed an opinion dismissing both appeals, concluding the unlawful detainer court's ruling was a non-appealable interlocutory ruling.

Jesse's causes of action for quiet title and declaratory relief sought a judicial determination that he was the rightful owner of the Van Nuys condominium. The cause of action for an accounting sought an accounting of Barenholtz's "payment or receipt of any money for Jesse" as a trustee of the special needs trust or through his power of attorney.

The remaining causes of action all arose from Barenholtz's and Simkin's prosecution of the unlawful detainer action, Jesse's eviction, and Barenholtz's refusal to voluntarily restore Jesse to the condominium following the vacatur of the default judgment in the unlawful detainer action. Jesse's complaint additionally alleged that Barenholtz and Simkin failed to return Jesse's personal property following the vacatur of the default judgment in the unlawful detainer action.

In response, Barenholtz filed an anti-SLAPP motion to strike Jesse's entire complaint. Barenholtz argued that all of Jesse's causes of action against him arose from protected activity and were barred by the litigation privilege. In a declaration submitted in support of the motion, Barenholtz described Jesse as "quite impaired," lacking the "ability to live independently," and suffering from "severe behavioral issues regarding interpersonal contact, food, personal hygiene, medical care and toileting." Barenholtz also described Jesse as a "hoarder" who kept the Van Nuys condominium in a "horrible, unlivable, unsafe and unsanitary" condition. Barenholtz claimed that Jesse did "not have sufficient income or assets" to remain in the condominium, and the Potter trust did not have the assets necessary to maintain or repair it.

Jesse opposed the motion, disputing both that his claims against Barenholtz arose from protected activity and that the litigation privilege applied. In particular, Jesse argued that the litigation privilege does not

6

apply to acts of extrinsic fraud. Jesse also filed a motion seeking to recover his attorneys' fees for opposing the motion under section 425.16, subdivision (c), arguing that Barenholtz's motion was frivolous.

The trial court denied the motion to strike. In its ruling, the court held that Jesse's sixth cause of action for accounting and eighth cause of action for declaratory relief did not arise from Barenholtz's protected conduct and thus fell beyond the anti-SLAPP statute. The court determined that Jesse's remaining causes of action arose from the allegation that Barenholtz procured the unlawful detainer judgment (and subsequent writ of possession) through extrinsic fraud. The court concluded that, under California law, the prosecution of an unlawful detainer action was "protected activity" under section 425.16.

Turning to the second prong of the anti-SLAPP statute, the trial court rejected Barenholtz's argument that Jesse's remaining claims were barred by the litigation privilege. The court adopted Jesse's argument, concluding that under *Silberg v. Anderson* (1990) 50 Cal.3d 205 (*Silberg*), the litigation privilege does not protect acts of extrinsic fraud. After reviewing the parties' respective evidentiary showings, the court determined that Jesse sufficiently established a "likelihood of prevailing so that the Barenholtz special motion to strike must be denied."

The trial court granted Jesse's request for attorneys' fees under section 425.16, subdivision (c)(1), concluding that Barenholtz's anti-SLAPP motion was "frivolous" under the statute. The court concluded that Barenholtz's motion was "based on a false characterization of irrefutable facts about Barenholtz's fiduciary obligations to [Jesse] and his obligations of fair disclosure to the courts from which he sought judicial orders." The court awarded Jesse $72,355 in attorneys' fees.

7

IV.  *Appeal*

Barenholtz timely appealed the trial court's March 28, 2024, order denying his anti-SLAPP motion to strike and granting Potter's motion for attorneys' fees.

**DISCUSSION**

I.  *Anti-SLAPP Procedure*

The "anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).)  A "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

In evaluating an anti-SLAPP motion to strike, courts conduct a two-step analysis.  First, the court decides whether a defendant has met its "burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged."  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.)  Second, if a defendant meets its burden on the threshold showing, the court decides if the plaintiff "has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

8

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We review the trial court's evidentiary rulings for abuse of discretion. [Citation.]" (*Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 763.)

II. *Scope of Appeal*

In his reply brief, Barenholtz states that he is not challenging the denial of his anti-SLAPP motion to strike Jesse's causes of action for accounting, quiet title, or declaratory relief. Accordingly, we affirm the trial court's denial of Barenholtz's anti-SLAPP motion to strike those causes of action. The arguments on appeal all concern Jesse's five tort claims for dependent adult abuse, trespass, conversion, trespass to chattels, and negligence.

III. *Prong One: Arising from Protected Activity*

At the first step of the anti-SLAPP analysis, "the moving party must establish both (1) that its act constituted protected activity; and (2) the opposing party's cause of action arose from that protected activity." (*Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 130; *Wilson, supra,* 7 Cal.5th at p. 887.) "At this stage, the question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected." (*Wilson*, at p. 888.)

In determining whether a defendant has met this burden, "courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a

9

statutorily defined category of protected activity. [Citation.]" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)

Barenholtz argues Jesse's remaining claims all arise from Barenholtz's actions of obtaining the default judgment and executing the writ of possession in the unlawful detainer action. We agree.

The protections of section 425.16 extend to "any act" taken in furtherance of the right to petition. (§ 425.16, subd. (b)(1).) "The filing of a lawsuit is thus an exercise of a party's constitutional right of petition under the anti-SLAPP law." (*Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 285, fn. 3.) For this reason, courts have recognized that "[t]he prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16. [Citations.]" (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281.)

"[P]rotection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation." (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537.) Courts have also adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908 (*Kashian*).) Actions taken by an attorney to enforce a judgment fall within the scope of section 425.16, even where the underlying judgment was allegedly procured by fraud. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062–1065 (*Rusheen*).)

Jesse's causes of action for dependent adult abuse, trespass, conversion, trespass to chattels, and negligence all arise from actions Barenholtz took in prosecuting the unlawful detainer action and enforcing the resulting default judgment and writ of possession. Jesse attempts to avoid this conclusion by

10

arguing his tort claims do not arise from any actions taken in the unlawful detainer action but instead are premised on Barenholtz's refusal to return possession of the condominium to Jesse after the trial court vacated the default judgment. We find this argument unconvincing.

As the trial court noted, Barenholtz obtained and retained possession of the condo through his enforcement of the writ of possession issued in the unlawful detainer action. Even after the default judgment was vacated, the question of whether the condominium should be restored to Jesse's possession was a point of dispute being actively litigated by the parties in the subsequent appellate proceedings and motion practice in the unlawful detainer action. Taking, as we must, an expansive view of what constitutes "litigation-related activities" under section 425.16, we conclude that Barenholtz's actions obtaining and retaining possession of the condominium arose from, and were necessarily related to, the prosecution of the unlawful detainer action. Therefore, Barenholtz's conduct is protected under the anti-SLAPP statute. (*Kashian, supra,* 98 Cal.App.4th at p. 908; *Rusheen, supra,* 37 Cal.4th at pp. 1062–1065.)

Having determined that Barenholtz carried his burden to establish that the five tort causes of action arise from his protected activity, we turn to the question of whether Jesse has established a probability of success on his tort claims under the second prong of the anti-SLAPP analysis.

IV.     *Prong Two: Probability of Success on the Merits*

Under the second step in the anti-SLAPP analysis, a plaintiff "need only establish that his or her claim has 'minimal merit.'" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) To satisfy this burden, the plaintiff "'must demonstrate that the complaint is both legally sufficient

11

and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" (*Ibid.*)

A.    *Litigation Privilege*

Barenholtz contends Jesse's tort claims are barred by the litigation privilege codified in Civil Code section 47, subdivision (b).

The litigation privilege extends to any communication: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action.  (*Silberg, supra,* 50 Cal.3d at p. 212.)  "The principal purpose of section 47[, subdivision (b),] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]"  (*Id.* at p. 213.)  The privilege promotes effective judicial proceedings by encouraging "'open channels of communication and the presentation of evidence'" without the external threat of liability.  (*Ibid.*)

"To effectuate its vital purposes, the litigation privilege is held to be absolute in nature."  (*Silberg, supra,* 50 Cal.3d at p. 215.)  For this reason, the privilege "extends to fraudulent statements, even when made to a court, if they were made in furtherance of litigation."  (*Herterich v. Peltner* (2018) 20 Cal.App.5th 1132, 1141 (*Herterich*).)  As our Supreme Court has recognized, the application of the privilege "necessarily results in some real injuries that go uncompensated" but that is the "'price that is paid'" to ensure free access to the courts.  (*Silberg,* at p. 218.)

12

B.     *Jesse's Tort Claims Arise from Privileged Conduct*

Jesse argues the litigation privilege does not apply because his tort claims are based on noncommunicative conduct.

We agree that the threshold issue in determining whether the litigation privilege applies is whether the defendant's conduct was communicative or noncommunicative.  (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 211; *Mero v. Sadoff* (1995) 31 Cal.App.4th 1466, 1480.)  Jesse is also correct that the litigation privilege generally "applies only to communicative acts and does not privilege tortious courses of conduct."  (*Kupiec v. American Internat. Adjustment Co.* (1991) 235 Cal.App.3d 1326, 1331.)  But the privilege does not stop at communicative acts.

*Rusheen* is instructive.  In *Rusheen,* our California Supreme Court held that "where the cause of action is based on a communicative act, the litigation privilege extends to those noncommunicative actions which are necessarily related to that communicative act."  (*Rusheen*, *supra*, 37 Cal.4th at p. 1052.)  Applying this rule, the *Rusheen* court concluded that, where the plaintiff alleged the defendant filed false declarations of service to obtain a default judgment against him, the litigation privilege extended to the defendant's post-judgment efforts to enforce the judgment, including applying for a writ of execution and levying on the plaintiff's property.  (*Id.* at p. 1065 ["the enforcement of the judgment in reliance on the filing of privileged declarations of service was itself privileged"].)

We reach the same conclusion here.  The gravamen of Jesse's tort claims against Barenholtz all stem from the allegation that Barenholtz fraudulently obtained the default judgment in the unlawful detainer action and enforced that judgment through a writ of possession.  Barenholtz's possession and retention of the condominium were actions necessarily related

13

to the prosecution of the unlawful detainer action—both before and after the default judgment was vacated. This brings us squarely within *Rusheen*, and we conclude that the litigation privilege applies to Barenholtz's post-judgment execution of the writ of possession.

Jesse's reliance on *Chacon v. Litke* (2010) 181 Cal.App.4th 1234 (*Chacon*) is misplaced. In *Chacon*, a landlord successfully brought an unlawful detainer action to temporarily evict his tenants under a local ordinance to perform repairs to the property. (*Id*. at p. 1239.) The landlord did not complete the repairs within the time contemplated by the temporary eviction. When the landlord refused to allow the tenants to return to the property, they sued for wrongful eviction and related claims. Our colleagues in the First District held that the litigation privilege was inapplicable because the landlord's refusal to allow the tenants "to reoccupy the premises after their temporary eviction was not an effort by him to 'enforce' the unlawful detainer judgment" because that judgment did not award the landlord permanent possession. (*Chacon, supra,* 181 Cal.App.4th at p. 1257.)

Here, by contrast, the writ of possession issued in the unlawful detainer action awarded permanent possession of the condominium to Barenholtz. While the underlying default judgment in the unlawful detainer action was vacated, the writ was not recalled, and the unlawful detainer court did not rule that Jesse was entitled to reoccupy the condominium following vacatur of the default judgment. On such facts, we find *Chacon* unpersuasive.

C.      *The Extrinsic Fraud Exemption Does Not Apply*

"Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or,

14

other than from his own negligence, fraudulently prevented from fully participating in the proceeding. [Citation.] Examples of extrinsic fraud are: concealment of the existence of a community property asset, failure to give notice of the action to the other party, and convincing the other party not to obtain counsel because the matter will not proceed (and then it does proceed). [Citation.] The essence of extrinsic fraud is one party's preventing the other from having his day in court." (*City and County of San Francisco v. Cartagena* (1995) 35 Cal.App.4th 1061, 1067.)

The parties dispute whether Barenholtz engaged in any acts of extrinsic fraud in procuring the default judgment in the unlawful detainer action. We ultimately need not decide that question, as even assuming that Jesse sufficiently alleged extrinsic fraud, his tort claims arising from the purported fraud are nonetheless barred by the litigation privilege.

Jesse's argument to the contrary is premised on a sentence of dicta in *Silberg v. Anderson.* In *Silberg*, a former husband brought an action against the attorney who represented his former wife in their divorce proceedings, alleging claims for breach of contract, negligence, and "intentional tort." (*Silberg, supra,* 50 Cal.3d at pp. 210–211.) The plaintiff alleged that, during the divorce proceedings, the defendant attorney falsely represented the impartiality of a jointly-retained psychologist. (*Id.* at p. 210.) The defendant filed a demurrer claiming all of the plaintiff's claims were barred by the litigation privilege. Our California Supreme Court affirmed the trial court's order sustaining the demurrer and dismissing the action.

In reaching this result, the *Silberg* court noted the litigation privilege was "absolute in nature" and has been held to immunize defendants from tort liability based on all theories of abuse of process except malicious prosecution. (*Silberg, supra*, 50 Cal.3d at p. 215.) The court also reasoned

15

that, "To allow a litigant to attack the integrity of evidence after the proceedings have concluded, except in the most narrowly circumscribed situations, such as extrinsic fraud, would impermissibly burden, if not inundate, our justice system." (*Id*. at p. 214.) Seizing on this language, Jesse argues that his claims against Barenholtz arise from extrinsic fraud and are therefore not barred by the litigation privilege.

We note the language from *Silberg* was dicta. The claims at issue in *Silberg* did not concern extrinsic fraud. The question of whether all claims of extrinsic fraud necessarily fall beyond the ambit of the litigation privilege was not before the *Silberg* court. Cases do not stand for propositions not considered. (*People v. Harris* (1989) 47 Cal.3d 1047, 1071; *B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11.)

Jesse's interpretation of *Silberg* is also belied by subsequent case law. Four years after it issued the opinion in *Silberg*, our Supreme Court clarified that the "reference to 'extrinsic fraud' [in *Silberg*] apparently relates to the narrow doctrine permitting a collateral attack on a judgment that has been obtained by 'extrinsic fraud.'" (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 643, fn. 5 (*Moore*).) Following *Moore*, appellate courts have limited the "extrinsic fraud" language of *Silberg* as permitting equitable collateral attacks on a judgment obtained through extrinsic fraud. However, courts have held that this exception to the litigation privilege does not apply to derivative tort actions based on extrinsic fraud.

For example, the plaintiff in *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834 alleged a tort claim for fraud based on the defendant's alleged procurement of a stipulated judgment against the plaintiff through extrinsic fraud. (*Id*. at pp. 838, 841–842.) In response, the defendant filed an anti-SLAPP motion to strike, arguing the plaintiff's claims were barred by

16

the litigation privilege. The Court of Appeal agreed, concluding that even if plaintiff could establish extrinsic fraud by the defendant, her tort claims would nonetheless still be barred by the litigation privilege: "Moreover, even when extrinsic fraud can be demonstrated, the aggrieved party may seek to set aside the judgment, but none of the cases [plaintiff] cites support the contention that a separate action for damages may be pursued. . . . [¶] . . . Therefore, [plaintiff]'s cause of action for fraud is barred." (*Id*. at p. 844.)

Other appellate courts have drawn the same distinction. (See, e.g., *Bonni v. St. Joseph Health System* (2022) 83 Cal.App.5th 288, 304 [litigation privilege does not apply to equitable actions to set aside a fraudulent judgment but does bar tort claims]; *Herterich, supra,* 20 Cal.App.5th at p. 1147 [*Silberg* exception does not apply to tort claims based on extrinsic fraud]; *Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824 [holding litigation privilege barred plaintiff's two tort claims but not her claim for equitable relief]; *Heyman v. Franchise Mortgage Acceptance Corp.* (2003) 107 Cal.App.4th 921, 925, fn. 2 [litigation privilege bars direct action for fraud but not equitable actions to redress extrinsic fraud]; *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 26 [same]; *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1147 ["Where a civil judgment is procured by extrinsic fraud, the normal remedy is to seek equitable relief from the judgment, not to sue in tort"].)

It is undisputed that Jesse's five remaining causes of action sound in tort. We join the other appellate courts which have determined that the litigation privilege bars such claims, even when they arise from allegations of extrinsic fraud. Any contrary conclusion would be difficult to square with our Supreme Court's holding in *Rusheen*. The claims at issue in *Rusheen* arose from the filing of perjurious proofs of service, which allegedly resulted in the

17

entry of a fraudulent default judgment against the plaintiff. (*Rusheen*, *supra*, 37 Cal.4th at p. 1065.) Those are allegations of extrinsic fraud. Under Jesse's interpretation of *Silberg*, the claims at issue in *Rusheen* were not barred by the litigation privilege. But the *Rusheen* court instead concluded the plaintiff's claims were barred by the litigation privilege, while expressly quoting the "extrinsic fraud" language from *Silberg*. (*Id*. at pp. 1064–1065.)

The two cases cited by Jesse are unpersuasive. The plaintiffs in *Kimes v. Stone* sued their former attorneys under 42 United States Code section 1983. The plaintiffs, a brother and sister, alleged their attorneys conspired with a judge to overturn a jury verdict in state court concerning the administration of their deceased father's estate. (*Kimes v. Stone* (9th Cir. 1996) 84 F.3d 1121, 1124–1125 (*Kimes*).) The defendants filed a motion to dismiss under Federal Rule of Civil Procedure, rule 12(b)(6), arguing the plaintiffs' claims were barred by California's litigation privilege under Civil Code section 47. The district court granted the motion, and the Ninth Circuit reversed, concluding the litigation privilege under California law was preempted by federal law and therefore could not shield defendants from liability under the federal statute. (*Id*. at pp. 1126–1127.) In dicta, the *Kimes* court added that, even if California's state law litigation privilege was not preempted, "we are not entirely convinced that the Attorney Defendants would have been entitled to immunity for their alleged conduct because such conduct appears to constitute 'extrinsic fraud,' which is not covered by [Civil Code, section 47, subdivision (b)]." (*Kimes*, *supra*, 84 F.3d at p. 1127, fn. 3, citing *Silberg*.) The *Kimes* court offered no further analysis beyond this citation to the dicta from *Silberg*.

*Mula v. Mula-Stouky* (N.D. Cal. Aug. 15, 2022, No. 21-cv-04540-BLF) [nonpub. opn.] (*Mula*), is an unpublished order from a district court citing the

18

*Kimes* footnote to establish that California's litigation privilege did not bar tort claims based on extrinsic fraud. As with *Kimes*, the *Mula* court provided no further analysis on this point. Neither *Kimes* nor *Mula* acknowledged the California Supreme Court's clarification in *Moore* or the subsequent cases from California appellate courts that distinguished between an equitable action to attack a fraudulent judgment and a derivative tort action for damages. For these reasons, neither case is persuasive, particularly in light of the California authorities that have squarely confronted this issue.

We conclude that Jesse's tort causes of action against Barenholtz are barred by the litigation privilege under Civil Code section 47. We do not reach this decision lightly. (*People v. Alvarez* (2025) 114 Cal.App.5th 1115, 1119 ["'"Honesty in dealing with the courts is of paramount importance, and misleading a judge is, regardless of motives, a serious offense"'"].) And in reaching it, we do not imply that we condone Barenholtz's actions in the unlawful detainer action. Instead, we merely recognize that, under California law, Barenholtz cannot be held liable in tort for his conduct in the unlawful detainer action. As Jesse's tort claims are barred by the litigation privilege, he cannot establish a probability of success on those claims under the second prong of the anti-SLAPP analysis. The trial court therefore erred in denying Barenholtz's motion to strike Jesse's tort claims.

V.     *The Fees Award Cannot Stand*

"If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." (§ 425.16, subd. (c)(1).) "Thus, the procedure of section 128.5

19

controls the award of attorney's fees for a frivolous anti-SLAPP motion." (*Changsha Metro Group Co., Ltd. v. Xufeng* (2020) 57 Cal.App.5th 1, 8.)

"An action or tactic is frivolous for purposes of section 128.5 if it is 'totally and completely without merit or for the sole purpose of harassing an opposing party.'" (*De La Carriere v. Greene* (2019) 39 Cal.App.5th 270, 279, quoting § 128.5, subd. (b)(2).) "Whether an action is frivolous is governed by an objective standard: any reasonable attorney would agree it is totally and completely without merit." (*Levy v. Blum* (2001) 92 Cal.App.4th 625, 635.)

As we have determined Barenholtz should have prevailed in striking five of Jesse's causes of action, we cannot conclude that his motion was "totally and completely without merit" or filed solely to harass Jesse. (§ 128.5, subd. (b)(2).) The statutory basis for the trial court's fee award no longer exists. "Therefore, it follows that the order awarding fees and costs cannot stand." (*Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1320.)

## DISPOSITION[5]

The trial court's March 28, 2024, order is affirmed in part and reversed in part. We affirm the trial court's denial of the motion to strike Jesse's sixth cause of action for accounting, seventh cause of action to quiet title, and eighth cause of action for declaratory relief. The order is reversed as to Jesse's remaining causes of action and the award of attorneys' fees. On remand, the trial court is directed to enter an order granting Barenholtz's anti-SLAPP motion to strike Jesse's first through fifth causes of action and

---

[5] Jesse's request for judicial notice is granted.

denying Jesse's motion for attorneys' fees. The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


TAMZARIAN, J.


COGLIATI, J.*

---

*Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.